441 P.2d 510

The STATE of Utah, Plaintiff and Respondent,

v.

Eugene MEYERS, Defendant and Appellant.

No. 10944.

Supreme Court of Utah.

May 27, 1968.

Jimi Mitsunaga, Legal Defender, Robert Van Sciver, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Warren M. Weggeland, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a judgment entered on a jury verdict on a charge of possessing narcotics. Affirmed.

This case began after the Juvenile Court put a girl minor on probation conditioned on her living with an aunt. The girl became a runaway. An officer of the Juvenile Court filed a verified petition, stating the facts. This was supplemented by sworn oral testimony of a local female police officer, which testimony included an address where the girl was staying with two adult males known to have police records, and a female companion, the latter having rented the premises under an assumed name. The Juvenile Court, under the existing statute, issued a search and seizure warrant and placed it in the hands of the police officer. We think the warrant was valid and in doing so dispose of defendant's contention of invalidity.

The police officer, armed with the warrant, went to the address along with two other officers, where they found defendant outside the house. Upon asking why he was there he said he had come to cut the lawn. He did not question their authority, ask their purpose in being there, object in any way to their entering the house, or ask if they had a warrant or

any other evidence indicating their purpose or right to enter, nor did he claim any ownership, tenancy, guest privileges or anything else. The officers did not question him about anything else. Shortly thereafter he asked them if he could leave and they said he could.

At the same time, a Mr. Brown, trust rental man for a local bank, was at the premises pursuant to calls of neighbors with respect to the place being a nuisance, he being there also in the process of evicting the alias tenant. He had no objection to a search nor did he inquire about warrants. The upshot of the whole thing is that the tenant was nowhere around, defendant nor the trust man neither encouraged nor discouraged the look-see of the officers,—who could have forced an entry even though the tenant had been present.

The officers checked downstairs for the girl, and not finding her, checked upstairs, particularly a room that obviously had been occupied. They did not find the girl there, but in checking bureau drawers and a night stand by the bed to find clues as to her possible whereabouts, discovered a sack containing narcotics and some bottles of pills, which had labels with defendant's name thereon. These were taken into custody along with clothes, a battery, etc., found in the room belonging to defendant.

Defendant was charged and convicted by a jury as mentioned. No one attacked the verdict for insufficiency of the evidence. The only pertinent points on appeal had to do with constitutionality of the procedure under the Fourth and Fourteenth Amendments to the United States Constitution: 1) That the lower court erred in saying defendant did not have standing to claim a constitutional right to have the evidence suppressed; 2) that the court erred in denying defendant's motion to quash the warrant as being offensive to his constitutional right as to search and seizure; and 3) that Mirandawise, he was not advised of his right to counsel, etc., while being escorted to jail in a police car.

■ Taking 3) above, the only thing talked about in the police car was defendant's insistence on the return of his clothes, a battery and the like. This conversation had been preceded by a voluntary telephone call *by the defendant to the officer,* making the same request. It is one of those don't call me, I'll call you situations, where the defendant initiated the conversation himself, and how he can claim that under such noncustodial circumstances there is anything in Miranda that would require a police officer to advise him of his rights, we can't understand, except to pay homage to the effectiveness Mr. Miranda has lent to the criminal in opening prison doors. The contention here is quite untenable.

■ As to 1) above, we think the facts in this case compel the conclusion that defendant had no standing to pursue his con-

tention. The warrant was not directed to him, he claimed no interest in the premises or its occupation, he falsified with respect to the reason for his presence on the premises, from which he departed at the first opportunity, and claiming no interest in any personal property therein. Now, after his disarming conduct and words, he urges a point after the fact, of claimer of rights when clearly he evinced a disclaimer. We think such contention to be specious.

■ As to 2): This point is clearly outside the scope of this case. The warrant was not directed to or had anything to do with the defendant, so that he has no standing to object on the ground asserted,—particularly since he disclaimed any interest in the house or anything in it. The contention is that the warrant was invalid. We have disposed of that issue hereinabove, and even if the warrant were invalid, defendant against whom it was *not* issued, cannot take advantage of someone else's right to object, or of his own deliberate deception, to advance a defense that in all logic, reason and procedure is a turnabout and belated effort to hide behind the "We, the People" document, which he flouted and now seeks to deify for his advantage.

■ We think the officers were on the premises lawfully, and this being so, have not only the right, but the duty, to seize contraband which they discover, irrespective of the fact that their warrant is designed to seize a person.[1] Otherwise, the administration of criminal justice becomes a farce and an inoculation against apprehension and prosecution of law breakers. The arguments of counsel for defendant in this case were scholarly, but ineptly based on a myopic and somewhat unreasonable interpretation of the document inspired by the shot heard round the world.

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ., concur.

---

1. People v. Harris, 34 Ill.2d 282, 215 N.E. 2d 214, cert. den. 384 U.S. 993, 86 S.Ct. 1900, 16 L.Ed.2d 1009 (1966); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).