The People of the State of Illinois, Plaintiff-Appellee, *v.* Juan E. Emert, *et al.*, Defendant-Appellant.

(Nos. 70-245, 70-246 cons.;

Second District—August 19, 1971.

Rehearing denied October 28, 1971.

Morton Zwick, Director of Defender Project, of Chicago, (E. Roger Horsky, of Defender Project, of Elgin, of counsel,) for appellant.

John B. Roe, State's Attorney, of Oregon, (Alan Cargerman, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendants were convicted of armed robbery of an A & P store in Rochelle, Illinois. Their cases were transferred to this court by the Supreme Court and have been consolidated for the purpose of appeal.

Both defendants contend that the trial court erred in (1) refusing to grant their hearing on defense counsel's motion, made during trial, to quash a search warrant and suppress evidence, and (2) that their court appointed counsel was incompetent. In addition, defendant Baker contends that he was not proved guilty beyond a reasonable doubt.

The State's evidence consisted of the testimony of the store manager, the check-out clerk, two policemen, two people whom defendants visited shortly after the time of the robbery, and defendant Baker's father. According to these witnesses, Baker, who was known to the check-out clerk, entered the store alone about 5:00 P.M. on September 29, 1969. He remained for 10 to 15 minutes in the general area of the store's freezer section, from which vantage it is possible to observe the store office containing several safes. Baker left without making a purchase. About 6:00 P.M., a man, who was not wearing a mask and who was later identified as defendant Emert, entered the store. He arrived at the check-out counter carrying a shopping bag and a box of "Sociable" brand crackers. The man drew a gun and announced the robbery. He took about $1100, including an A & P pay envelope, containing approximately $40, marked "Marian". During the period of the robbery, only the manager and the clerk were in the store. Both remembered the time because they were in the process of completing the six o'clock closing. The man left at approximately 6:15 P.M., and ran across the street into an areaway between buildings. He was followed by the manager. Upon reaching the alley behind the buildings, he entered a moving, white 1959 Pontiac which was waiting near the entrance to a house rented by defendant Baker and occupied by both defendants and Baker's father.

Baker's father testified that defendants came to visit him from Kentucky on the Friday before the robbery; that he saw his son sometime before 6:00 P.M. on the night of the crime and that he knew his son intended to return to Kentucky but did not know the exact time he planned to leave.

Mrs. Margie Hess testified that on the day in question defendants arrived at the Hess apartment about 6:30 P.M. (she remembered the time because "Gunsmoke" was just coming on television); that Emert brought a box of "Sociable" crackers with him and defendants remained for about two hours. Mr. Hess testified that they were driving a white 1959 Pontiac.

John McAllister, a State Trooper, testified on direct examination that he received a radio message which described a white 1959 Pontiac and informed him that the men therein were armed. He saw the automobile late in the evening of September 29, 1969, followed it, and pulled up behind it when it stopped. According to the trooper, Emert was driving and Baker was in the front seat. He further said that, after pulling up behind the automobile, he ordered defendants to get out, to put their hands up and told them they were under arrest. Prior to any Miranda warning, he asked Emert where they were heading. The reply was "to Kentucky to visit Baker's sick relatives." He then gave them the Miranda warnings and asked to search the automobile. Emert said, "Yes, sir. Go ahead." A

search of the trunk revealed a .38 calibre Smith and Wesson pistol and some money.

On cross-examination, the trooper changed his testimony by denying that any statements were made before the Miranda warnings were given.

Defendants were taken to the Marshall County jail and later transferred to Ogle County; their car was towed to a garage in Woodford County. On October 2, 1969, the Rochelle police (Ogle County) advised the State Police that there should have been more money in the automobile. On the basis of this information, the trooper obtained a search warrant and went to the garage in Woodford County. His second search revealed approximately $200 and an A & P money envelope with "Marian" written on it.

Defense counsel questioned McAllister about the search warrant. The trooper stated that the warrant had not been served on the defendants and that the defendants were not informed of any search. When counsel asked if an informant was involved, the State requested a discussion out of the presence of the jury. In chambers, defense counsel said he had never seen a copy of the search warrant. The State's Attorney left to get a copy. The trial judge said, "It is my understanding that you have to make a motion to suppress before the case goes to trial." The State's Attorney returned and defense counsel began to question the basis for the issuance of the warrant. The court reviewed its file on the case, determined no pretrial motion to suppress had been filed, reminded defendants' attorney of the length of time that the men had been in jail, and of the length of time since he had been appointed. The State's Attorney said, "For the record, I don't have any knowledge of the search warrant. I have no objection to that being in the record." However, he did object on the ground that the motion was not timely. The court then said, "I think you better scrap any testimony concerning the search warrant." The hearing resumed in the presence of the jury and no further questions were asked concerning the warrant.

The store manager was recalled and identified the A & P envelope with "Marian" written on it (found in the second search) as the one taken in the robbery.

Defendants were the only witnesses for the defense. Defendant Baker said he met Emert in Kentucky and returned to Illinois with him; that Emert's house had recently burned down and a collection had been taken up for him; that Emert placed that money in a paper bag which he locked in the trunk of the Pontiac. According to Baker, he visited the A & P twice during the day of September 29, 1969, once at about 10:00—11:00 A.M. and once between 4:30—5:00 P.M.; that the second visit was for the purpose of meeting a friend; that he met and talked with the friend for about five to ten minutes in the store and then returned to his father's

apartment. He said that when he and Emert left, between 5:45 and 5:50 P.M., Baker's father was asleep on the couch; that they then went to the Hess apartment in Emert's white 1959 Pontiac, arriving at the Hess' at approximately 6:00 P.M., or before, and that the "Flintstone's" were on television. They left the apartment 2 hours later, Emert driving, and stopped for a beer; after leaving the bar, Baker drove. Baker stopped the automobile because of car trouble, got out of the vehicle and raised the hood to check it. At that time there was a car (Trooper McAllister's) parked 300 feet behind them. After other police cars arrived, the troopers approached the men, handcuffed and searched them. Baker said that neither man was informed of the offense being charged and specifically denied hearing Emert give anyone permission to search the car.

Defendant Emert's testimony was essentially the same as Baker's including confirmation that the "Flintstone's", not "Gunsmoke", was on television. He added that Baker drove from the house to the Hess', that he got out of the car to help Baker while he worked on the automobile; that some of the money in his automobile came from an income tax refund and that the reason they decided to leave for Kentucky was that one of Baker's relatives had passed away. Emert did not remember who took the crackers to the Hess apartment, saying that there had been two or three boxes of them in the automobile since that morning.

The man who Baker allegedly met in the grocery store did not testify.

■■■ The initial question presented by this case is whether a search warrant was necessary. If the warrant was not necessary, no error arose from the court's denial of counsel's motion, made during trial, to quash the search warrant and suppress the evidence obtained therefrom. The United States Supreme Court standards established for search and seizure questions are read into Illinois law. *People v. Grod* (1944), 385 Ill. 584. The principle cases dealing with searches of automobiles are *Carroll v. United States* (1925), 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280, 39 ALR 790; *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975; and *Coolidge v. New Hampshire* (1971 U.S.), 29 L.Ed.2d 564.

*Carroll* provides for warrantless searches of a motor vehicle stopped on a highway, recognizing the inherent mobility of the automobile and the possibility that the failure to make an immediate search would result in the disappearance of contraband. *Chambers* reaffirmed *Carroll* and further permitted the police to take the automobile to the police station and search it there, the rationale for this extension being that, for constitutional purposes, there is no difference between "* * * on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search

without a warrant." (26 L.Ed.2d 419, 428.) However, the court carefully refrained from giving *carte blanche* approval to search automobiles without a warrant. It said, at the same page:

"Neither Carroll, supra, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords."

The automobile search doctrine has recently been further explained in *Coolidge.* There defendant, under investigation for a murder and having cooperated with the police, was arrested inside his home with the police surrounding the house. At the time of the arrest, an auto owned by him was parked in the driveway of his home. A search warrant was issued for the automobile and it was towed to the police station where it was searched two days later. It was searched twice more, approximately a year thereafter. Upon holding the search warrant invalid for reasons not pertinent to our case, the court considered various theories put forth by the State to justify the searches without a warrant. One of these was that under *Carroll* and *Chambers,* when the police have probable cause to search an automobile on the highway they may take it to the police station to do so. The plurality opinion pointed to the absence of mobility in *Coolidge* which was the underlying rationale of *Carroll* and *Chambers,* and said, at 29 L.Ed.2d 580-581:

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' Carroll, supra, at 153, 69 L.Ed. at 551, 39 ALR 790, and the 'automobile exception,' despite its label, is simply irrelevant.

Since Carroll would not have justified a warrantless search of the Pontiac at the time Coolidge was arrested, the later search at the station house was plainly illegal, at least so far as the automobile exception is concerned. Chambers, supra, is of no help to the State, since that case held only that, where the police may stop and search an automobile under Carroll, they may also seize it and search it later at the police station."

Unquestionably, in the instant case, the first search on the highway fit squarely within the dimensions of *Chambers*. The second search, however, like the searches in *Coolidge*, was not a search where "it is not practicable to secure a warrant." The automobile was stored at a remote body shop where it remained for approximately three days. Mobility is not an issue. There is no indication in the record that any further search would have been conducted without the request of the Rochelle police.

The State argues that either the probable cause to make the original search continued throughout the period of detention or that there was, as stated in oral argument, "renewed probable cause" due to the Rochelle police request. We disagree. To say that continuing probable cause to search exists is to give the police unbridled authority to rummage through private property again and again at their leisure. To say that renewed probable cause arose, flagrantly disregards the caution of *Chambers* and *Coolidge* where in the extra protection provided by a search warrant is required if the mobility of the vehicle is not an issue. The State must have thought a search warrant necessary; it had one issued. We conclude that, under the circumstances of this case, a search warrant was necessary.

Since we hold that a warrant was required for the second search, we must consider defendants' contention that their oral motion made during trial was improperly denied. Section 114—12 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 114—12), provides that motions regarding the suppression of evidence must be in writing and "shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." In *People v. Thomas* (1967), 88 Ill.App.2d 71, defendant was arrested in connection with a rape. During the trial, the State produced sheets, blankets and a bedspread taken from the defendant's room. Defendant's oral motion to suppress was denied. At defendant's request, a hearing was held to determine whether defendant could possibly have had knowledge of seizure of the items. Defendant was the sole witness at the hearing. His uncontradicted testimony showed that he was detained in the hall during the entire search and was wholly unaware that these articles were taken by the police. The court held that, from the evidence adduced at the hearing, the defendant was not aware, prior to trial, of the grounds upon which to base a motion to suppress and, therefore, a motion during trial was proper.

In the case at bar, defense counsel's statement that he had never seen a copy of the search warrant, the State's Attorney's admission that he had no knowledge of it, and the trooper's testimony that a copy of the warrant was not served upon the defendant, led to the assumption that the defendants were not aware of the search prior to trial.

██ During the conference in chambers, the court, after reviewing the file, was of the opinion that sufficient time had elapsed prior to trial for the defendants to move to suppress the search warrant and, having failed to do so, were precluded from doing so during trial. This was an incorrect conclusion in view of the facts. The court should have permitted the defendants to establish the timeliness of their motion and, if found timely, to then hear evidence on the merits of the motion. Ill. Rev. Stat. 1969, ch. 38, par. 114—12.

Defendants' contention concerning the competency of counsel is stated in terms of lack of preparation and investigation. However, the failures they allege concern the actions of counsel in regard to the two searches of the automobile. Since we hold that the first search was proper and that counsel acted properly when confronted with the result of the second search, no question of incompetency arose.

We now turn to a consideration of the question of Baker's accountability. To hold Baker accountable for the actions of Emert, the State was required to show that either before or during the commission of the offense, and with intent to promote or facilitate such commission, Baker solicited, aided, abetted, agreed or attempted to aid Emert in the planning or commission of the offense. (Ill. Rev. Stat. 1969, ch. 38, par. 5—2.) Defendant Baker admits that circumstantial evidence contained in the present case may form the basis for holding him accountable, but contends that it "falls far short of establishing his guilt beyond all reasonable doubt." Baker primarily relies upon *People v. McMillan* (1970), 123 Ill.App.2d 232. We distinguish that case upon the facts. There the State never established the accountability of the co-defendant Krause. There was a failure to place Krause at the scene when the crime occurred.

██ Here, the testimony elicited during the trial shows that Baker and Emert travelled together to Rochelle from Kentucky, that they were living in Baker's house across the street from the grocery store and that Baker made a trip to the store immediately prior to the holdup to visit a friend. Immediately after the robbery, Emert jumped into a moving vehicle (the described white Pontiac) which was behind Baker's house; the men arrived together at the Hess apartment within minutes of the crime; Emert stated that Baker was the one who drove the Pontiac to the Hess home; and they were arrested together on the evening of the crime. In addition, during the trial, Baker admitted knowing the automobile contained money and a pistol but gave other reasons for their presence. In the instant case, based upon all of the evidence introduced and allowed (circumstantial and otherwise), we conclude that Baker was proven guilty beyond a reasonable doubt. However, the question of whether all of this evidence should have been introduced and allowed

should properly have been ascertained by a hearing on the defendants' motion to suppress.

Therefore, this case is remanded with directions to the trial court to vacate the judgment of conviction entered against the defendants herein and conduct a hearing in accordance with this opinion. In the event the trial court concludes that the motion to suppress the search warrant should be allowed, then the trial court shall grant the defendants a new trial. If, however, the motion to suppress the search warrant is denied, then the trial court shall enter a new judgment of conviction.

This cause is remanded with directions.

Remanded with directions.

GUILD and STROUSE, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE MORAN delivered the opinion of the court:

The State has filed a petition for rehearing claiming that we misinterpreted the holding of the plurality opinion in the *Coolidge* case. It is argued that Mr. Justice Stewart's interpretation of *Chambers* in *Coolidge* would validate a warrantless search of Emert's car on October 2, 1969. We disagree. Mr. Justice White, in his dissenting opinion in *Coolidge* has best explained our conclusion when at page 616 he stated:

"*  *  * But Chambers did not authorize indefinite detention of automobile so seized; it contemplated some expedition in completing the searches so that automobiles could be released and returned to their owners  *  *  *"

and continuing at page 617 said:

"The majority now approves warrantless searches of vehicles in motion when seized. On the other hand, warrantless, probable cause searches of parked but movable vehicles in some situations would be *valid only upon proof of exigent circumstances justifying the search.*" (Emphasis added.)

The term "exigent circumstances" seems to be the key factor in determining when a warrantless search of an automobile is authorized. We find no exigent circumstances in the record before us and therefore adhere to our original opinion.

The petition for rehearing is denied.

GUILD and STROUSE, JJ., concur.