The People of the State of Illinois, Plaintiff-Appellee, *v.* Tracy Stewart, Defendant-Appellant.

(No. 72-16;

Second District—February 21, 1973.

Ralph Ruebner, of Defender Project, of Elgin, for appellant.

William B. Petty, State's Attorney, of Mt. Carroll, (James W. Jerz, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A jury found defendant, Tracy Stewart (and co-defendants Willie B. Henne, James DePaolo and John Weisz) guilty of burglary and theft. Stewart was sentenced to a term of one to four years in the penitentiary.

On appeal defendant claims that the trial court erred in denying his motion to suppress certain evidence and that he was not proven guilty beyond a reasonable doubt.

The defendant was charged with the theft of a pliers, sidecutter and screwdriver, taken during the burglary of the Nature Center building at Palisades State Park. The tools, plus a red candle, (all seized from the auto of co-defendant Weisz) were the subject of the motion to suppress.

On Sunday, May 16, 1971, Savanna police received the description of an auto in connection with a reported theft of a car battery. Weisz's auto, in which the four defendants were riding, matched the description and was stopped by a police officer. Weisz, the driver, was ordered to drive to a city parking lot. There, State Trooper Towery and Conservation Inspector Hensal (called to assist in the investigation) searched the vehicle. During the search, Hensal noticed the articles aforementioned but did not then know them to be contraband. The defendants were arrested on charges not pertinent to this case.

After the arrest, the Sheriff, Hensal, and Assistant Ranger Cate who was also present at the search, left to investigate a reported burglary at the State Park. Upon arrival, it was found that the Nature Center building had been entered and that the articles previously described herein were missing. Remembering that such items had been seen in Weisz's auto,[1] the three returned to Savanna. Without requesting permission or obtaining a search warrant the car was entered and the described articles seized.

---

[1] At the hearing on the motion to suppress, the Sheriff testified that it was Cate who had recalled seeing the items; at the trial, testimony indicated that it was Hensal who made the recollection. The testimony of both Cate and Hensal, however, indicated that they had observed the articles when the auto was first searched.

At the hearing on the motion, Towery and his partner, Trooper Bouseman, testified that the ownership of the vehicle was ascertained after the auto had been driven to the city parking lot; that Towery requested and received consent from Weisz to search the auto. Weisz denied granting any person permission to search his auto. The trial judge denied the motion to suppress on the basis that Weisz had consented to the search.

Defendant argues that the search was violative of the Fourth Amendment of the Federal Constitution in that it was conducted without first obtaining a warrant. He additionally urges that the facts of the case do not bring it within any of the recognized exceptions for warrantless searches, *i.e.*, plain view, consent, search incident to arrest or search of a moving vehicle.

■■ Consent to a search waives the constitutional protection against unreasonable searches. (*People v. Donel*, 44 Ill.2d 280, 283 (1970).) Where, as here, there was contradictory testimony as to whether the owner consented to the search, credibility of witnesses is one factor which the trial judge may consider in resolving the conflict. A reviewing court will uphold the trial judge's determination "unless it is clearly unreasonable." *People v. Ledferd*, 38 Ill.2d 607, 610 (1967); *People v. Harris*, 34 Ill.2d 282, 285 (1966), *cert. den.* 384 U.S. 993. A review of the evidence herein indicates that the trial judge's decision was reasonable.

■■ Defendant alleges that even if consent was given, it was granted only to Towery and that Hensal, who also searched the auto, should not have been allowed to participate. This contention is without merit. Towery testified that, in the presence of Hensal, permission to search was requested and given. Under this circumstance, we find that the permission was a general, unqualified consent which extended to Hensal.

■■ In the process of the search, Hensal observed the tools and the red candle. Defendant argues that assuming Weisz's consent was given, it was a limited consent permitting only a search for a car battery; that the search exceeded the authority granted and the resultant observation of the articles in question was beyond the consent. We do not agree. This was not an exploratory search; based upon defendant's own argument, it was appropriate to search the interior of the car for an auto battery. Law enforcement officers cannot be expected to disregard other items observed in the course of a lawful search. *People v. Robinson*, 40 Ill.2d 453, 457 (1968).

■■ Defendant further alleges that, regardless of the validity of the first search or the information gained as its result, the second warrantless search of the vehicle was unconstitutional. When the officers learned of the missing items and recalled that similar articles had earlier been observed in the Weisz auto, there was sufficient independent probable

cause for them to conclude that the described property offended against the law. They were justified in reentering the vehicle without further consent of the owner. *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925); *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975 (1970); *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971).

Defendant alleges that the *Carroll-Chambers-Coolidge* doctrine applies only when there are exigent circumstances (e.g., alerted occupants, fleeting opportunity to search) and in those cases where it is impracticable to secure a warrant. He agues that such circumstances were not present in the instant case, the search having occurred two hours after the occupants were under arrest and the auto in police custody in a city lot. This argument is resolved by *People v. Smith,* 50 Ill.2d 229, 231 (1972), wherein the Court held admissible evidence obtained by a warrantless search of a vehicle six hours after the car had been locked in a garage in another town.

This court's decision of *People v. Emert,* 1 Ill.App.3d 993 (1971), cited in support of defendant's position, is distinguishable. In that case, the warrantless search occurred three days, not two hours, after the arrest of the occupants. Additionally, in *Emert* the police had not observed during their initial search, the item they sought in the second search.

We hold that it was not unreasonable for the trial judge to find that the initial search was valid based upon consent; that information obtained as a result of the initial search created independent probable cause for the second search; and that despite his reasons, the trial judge correctly denied the motion to suppress. See, *People v. York,* 29 Ill.2d 68, 71 (1963); *People v. Schmidt,* 5 Ill.App.3d 787 (1972).

■■ Defendant claims he was not proven guilty beyond a reasonable doubt in that his conviction was based upon "flimsy" circumstantial evidence. We do not agree.

Cate and Park Naturalist Jachino both identified the tools recovered from the auto as tools missing from the Nature Center. Although the only distinctive mark on these commonly used tools was a green paint mark on the pliers, both men stated that they had worked with the tools in the past and were sufficiently familiar with them to afford ready recognition. There was additional evidence that the missing red candle was a mate to a green candle; that both candles had been purchased and burned at the same time during the Christmas holidays. The green candle was admitted into evidence without objection; the jury was free to examine both and to observe the similarities between them, including the amount each had been burned. Finally, the facts indicate that the

crime occurred between 5:00 P.M. on May 15 and 9:30 A.M. on May 16. All four men alleged they had been in Chicago until mid-morning of the 16th. However, a State Trooper testified that at 3:15 A.M., May 16, he had observed the Weisz auto a mile and a half from the Nature Center. A toll collector also testified to having observed the auto, with four male passengers, at the Savanna-Sabula Toll Bridge at 10:00 P.M. on May 15th.

Defendant emphasizes the results of an Illinois Crime Lab analysis of the paint on the plier handle and its comparison to a sample of a paint used on the park's tables: the samples did not match. Defendant ignores, however, testimony that two types of green paint, manufactured by different companies, were used at the Park and that only one was available for the lab tests.

Finding no error, we affirm the judgment of the trial court.

Judgment affirmed.

SEIDENFELD and ABRAHAMSON, JJ., concur.