THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DAVID WIGGINS *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 76-61

Opinion filed December 30, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Sam Adam and Alan D. Blumenthal, both of Chicago, for appellee James Harris.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin and Deborah N. Michels, Assistant Public Defenders, of counsel), for appellees David Wiggins and Levi Royster.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The State appeals from an order of the trial court granting defendants' motion to suppress evidence relating to a burglary. (Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1).) The sole issue on appeal is whether the warrantless search of the trunk of defendants' car at the police station was proper. We reverse and remand. The pertinent facts follow.

Defendants David Wiggins, Levi Royster and James Harris were charged with the burglary of the home of Mitchell Labbee. They filed a motion to suppress evidence obtained in a search of the trunk of defendants' car. At the hearing on the motion, the following evidence was adduced.

Officer Richard Pena testified. At about 9 p.m. on April 3, 1973, he was on patrol in an unmarked squad car with fellow officers Grissett, Ward and Laughlin. At 79th Street and Jeffrey Boulevard, they observed a car without tail lights proceeding south. The officers pursued the auto and eventually curbed it at 87th Street. The driver of the car was defendant Wiggins, and defendants Royster and Harris were passengers. Officer Pena requested Wiggins to produce his driver's license. At this time he heard Officer Laughlin shout "bullets." He then looked into the car and observed two rifles in open view in the back seat with defendant Royster.

He drew his own gun and ordered Wiggins from the car. While Wiggins was exiting the car Officer Pena noticed a .45-caliber automatic pistol at the side of the seat near the driver's door. Because it was a high crime area and a crowd was forming, the police sought to remove the defendants as soon as possible. Defendants and their car were taken to the police station. While at the station Officer Pena did not personally see anything in, or remove anything from, the trunk of defendants' car. The officers did not know of any burglary at Labbee's home when defendants were taken into custody. Defendants were then charged with unlawful use of weapons and Wiggins was additionally charged with a traffic violation.

Upon cross-examination Officer Pena testified that he had a long conversation with defendant Harris at the station. After he advised him of his constitutional rights, Harris told him there were more guns in the car. Upon this information Officer Grissett later searched the car and found more guns, part of a coin collection and other articles, including gun registration certificates in the name of Mitchell Labbee in the trunk. Officer Pena testified on redirect examination that the police reports did not indicate that Harris was warned of his rights, that he had a conversation with Harris, or that Harris ever said there were other weapons in the car. Upon re-cross-examination Officer Pena stated that defendant Wiggins gave permission to search the trunk of the car, but he did not give it to Pena personally.

Officer Davis Laughlin testified that he was with Pena when they stopped defendants. After stopping them for a traffic violation he observed two rifles in the back seat with defendant Royster. Officer Laughlin was not present when the trunk was searched. Upon cross-examination he testified that Officer Grissett searched the trunk. Officer Laughlin did converse with defendant Wiggins at the station and asked if they could search the trunk of his car. Defendant nodded affirmatively. Upon redirect examination Officer Laughlin acknowledged testifying at the preliminary hearing that he did not hear anyone give permission to search the trunk, and concluded that the prior testimony was incorrect.

Officer James Grissett testified similarly concerning the stop and arrest of defendants. He drove defendants' car to the station. At the station defendant Wiggins gave permission to search the car by nodding his head affirmatively in response to an inquiry by Officer Laughlin. The lock was missing from the trunk so Officer Grissett opened it with a screwdriver. He recovered weapons, coins and identification papers belonging to Mitchell Labbee. The search of the trunk took place approximately 7 to 12 minutes after arrival at the police station. At this point the State stipulated that the police report did not indicate that defendant Wiggins was asked and gave permission to search the trunk.

Officer Laughlin was recalled and testified. The Labbee burglary was

discovered only after recovering the items from the trunk. Defendant Harris told him about the guns and defendant Wiggins gave permission to search the trunk. He recalled testifying before the grand jury that Harris gave the permission to search the trunk and now concluded that both Harris and Wiggins gave permission to search.

Defendant David Wiggins testified that he never gave permission to search the trunk of his car.

Defendant James Harris testified that he made no statement to any officer. He did not know anything was in the trunk until after the search had been made. He did not authorize any search of the trunk.

It was then stipulated that the court reporter, if called, would testify that on May 17, 1973, at the preliminary hearing in the instant case, Officer Laughlin was asked, "Did you at any time hear anyone give any of the officers permission to go into the trunk?" and there answered "No, sir."

The State relied upon two theories in the trial court to justify the search of the trunk of defendants' car, namely, consent and probable cause. The trial court found that the State's witnesses were unbelievable as to consent, and further, that the police had no reason to conduct the search of the trunk since defendants had been arrested and charged with unlawful use of weapons based on the guns observed in the interior of the car and the police then had no knowledge of any other crime. The State has not challenged the finding as to consent but does contend on appeal that the trial court erred in finding that there was no reason or probable cause for the search of the trunk.

■■■ It is well settled that a valid warrantless search of an automobile may be made if based on probable cause, which is defined as a knowledge of facts justifying a reasonably prudent person in believing that a crime has been or is being committed, and that evidence thereof is contained in the automobile. (*Carroll v. United States* (1924), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280; *People v. Jones* (1967), 38 Ill. 2d 427, 231 N.E.2d 580; *People v. Erickson* (1964), 31 Ill. 2d 230, 201 N.E.2d 422.) It is equally well-settled that where probable cause to search an automobile exists at the scene of a highway stop, the police may postpone the search and later conduct a valid warrantless search of the automobile at the police station even though the occupants of the car are in police custody. (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *People v. Wiseman* (1974), 59 Ill. 2d 45, 319 N.E.2d 225; *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.) The initial and paramount issue to be decided in such cases is whether probable cause to search the automobile exists at the scene of the stop. We are satisfied that probable cause for a search did exist at the scene in the instant case. Upon observing the rifles and handgun in the automobile's interior, the officers

could reasonably believe that the crime of unlawful use of weapons was being committed in their presence. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1.) That being so, probable cause existed to search the entire car for further evidence of the same crime—a search for other weapons.

The State cites *People v. Ehn* (1974), 24 Ill. App. 3d 340, 320 N.E.2d 536, as controlling in the instant case upon the issue of probable cause. We agree. In *Ehn* the defendants had been validly stopped for a traffic violation and one of the officers saw a handgun in the automobile. Upon a search of the vehicle at the scene, two revolvers were recovered from the interior and two shotguns were found in the trunk. In affirming defendants' convictions for unlawful use of weapons this court held that when the officer viewed the gun in the car, at that moment probable cause existed "to believe a crime was being committed and that the contents of the car offended against the law." (24 Ill. App. 3d 340, 352, 320 N.E.2d 536, 545.) Substantially similar facts exist in the instant case, where the officers first viewed the rifles and then viewed the concealed handgun next to the driver's seat. While the search in *Ehn* took place at the scene of the stop, and the search in the instant case took place at the police station, the finding that probable cause to search existed at the scene of the stop was applicable in both. See also *People v. Watkins* (1974), 23 Ill. App. 3d 1054, 320 N.E.2d 59.

■■ We disagree with the trial court's reasoning that since defendants could have been, and in fact were, arrested and charged with a completed crime strictly based on the guns in the car's interior, the police could not reasonably make a further search of the trunk. The police were justified in searching the vehicle for more evidence of the crime for which defendants were taken into custody. See *People v. Hanna* (1969), 42 Ill. 2d 323, 247 N.E.2d 610, *cert. denied*, 399 U.S. 929 (1970); *People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, *cert. denied*, 395 U.S. 959 (1969); *People v. Carter* (1967), 38 Ill. 2d 496, 232 N.E.2d 692, *cert. denied*, 391 U.S. 965 (1968).

■■ Indeed, defendants' attorneys have conceded in oral argument that probable cause to search the entire car at the scene existed if the officers' testimony regarding their observation of the rifles and handgun at the scene could be believed. We find no reason to doubt this testimony. Defendant Harris argues that the trial court's finding that the officers' testimony as to consent was unbelievable necessarily discredits the entirety of their testimony. However, the trial court specifically found that the guns were observed at the scene based on their testimony. Thus, it found that certain portions of the officers' testimony were credible and other portions were not. In ruling on a motion to suppress, it is the trial court's province to determine the credibility of witnesses, and the weight to be given their testimony, and its findings will not be disturbed upon

review unless contrary to the manifest weight of the evidence. (*People v. Patton* (1975), 33 Ill. App. 3d 923, 339 N.E.2d 22; *People v. West* (1975), 25 Ill. App. 3d 827, 322 N.E.2d 587; *People v. Gonzales* (1974), 22 Ill. App. 3d 83, 316 N.E.2d 800.) We find no such error in the instant case.

■■ We next turn to the issue of postponing the search until after both the suspects and the car were in custody at the police station. The fact that the police may have had the opportunity to obtain a search warrant does not render the search illegal. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. (*Cooper v. California* (1967), 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788; *United States v. Rabinowitz* (1950), 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430; *People v. Jones* (1967), 38 Ill. 2d 427, 231 N.E.2d 580; *People v. Brown* (1967), 38 Ill. 2d 353, 231 N.E.2d 577.) Since probable cause to search existed at the scene of the highway stop, the police could postpone the search until the vehicle was removed to the police station and defendants were in custody. *People v. Wiseman* (1974), 59 Ill. 2d 45, 319 N.E.2d 225.

The search in the instant case was reasonable. Furthermore, the officers had made the stop at night, in a high crime area, a crowd was gathering where firearms had been found, and there existed the possibility of more firearms being discovered. It was therefore not unreasonable under these circumstances to postpone the search until the car had been removed to the police station. See *Chambers v. Maroney* (1970), 399 U.S. 42, 52 n. 10, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *People v. Wiseman; People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245.

■■ Defendants further argue that even if a postponed search was permissible, then it should have taken place immediately, without any delay, upon arriving at the station. While probable cause to search cannot continue indefinitely, or for a number of different searches (see *People v. Emert* (1971), 1 Ill. App. 3d 993, 274 N.E.2d 364), we do not find a delay of 7 to 12 minutes before making the search at the station house sufficient to render the search unreasonable. Searches of cars in police custody made after longer delays have been upheld, such as the six-hour delay in *People v. Smith* (1972), 50 Ill. 2d 229, 278 N.E.2d 73, *cert. denied*, 409 U.S. 1022, and the two-hour delay in *People v. Stewart* (1973), 10 Ill. App. 3d 187, 293 N.E.2d 169.

We find that the search of defendants' car at the police station was reasonable and based on probable cause. Therefore, the articles relating to the Labbee burglary were lawfully seized even though related to crimes other than that which justified the search. (*People v. Robinson* (1968), 40 Ill. 2d 453, 240 N.E.2d 630; *People v. Stewart.*) Since the articles came into the officers' possession pursuant to a lawful search, it was error to suppress such evidence.

For the foregoing reasons, the order of the circuit court of Cook County suppressing evidence is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

McNAMARA, P. J., and McGLOON, J., concur.