(No. 36372.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES HARRIS, Plaintiff in Error.

*Opinion filed March 24, 1966.*

DONALD P. HORWITZ, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

A jury in the criminal court of Cook County found defendant, Charles Harris, guilty of unlawful possession of narcotic drugs and he was sentenced to the penitentiary for a term of 5 to 15 years. The sole question raised for review is whether the narcotic drugs allegedly found in his hotel room and introduced into evidence were the product of an illegal search and seizure.

The People's evidence shows that about 2 o'clock in the afternoon of September 13, 1958, officers Nash and Vrdolyak observed a man they knew to be an addict standing on a street corner on the south side of Chicago. The officers had a conversation with the man, identified in the record only as Jerome, and were about to "shag" him from the corner, when he asked the officers if they would be interested in catching someone who was very "dirty." Officer Nash explained that a "dirty" person is one in possession of some form of narcotic drug.

Jerome said he could not talk there so the officers put him in their automobile and drove to the police station. Outside the station he told the officers that a man named Charles Harris, who lived in Room 426 of the Tivoli Hotel, was active in the sale of narcotics. They asked Jerome to accompany them to get a search warrant, but he said he was afraid. They took him to a telephone booth across the street from the station and he called Room 426 at the Tivoli Hotel. The officers could hear a male voice on the telephone

and heard Jerome ask if he could come to get some "stuff." The officers reached the hotel around 5 or 6 minutes after the telephone call had been made.

When they arrived at Room 426 they found the door open and Harris sitting on the edge of the bed. Nash said they were surprised and did not think there was any narcotic activity there because the door was open. The officers identified themselves and Harris said "come on in." The officers said, "we have information you are a dope peddler," and he replied, "Oh no, no. You have the wrong guy. I smoke a little, but I don't sell any. Go ahead, look around, help yourselves." Nash said they looked around, but they did not make a real thorough search because they thought Jerome's information was "phony." He found a black notebook, but it is not clear whether he opened a desk drawer to get it or whether it was on top of the desk. He also noticed some square cut pieces of brown paper bag, which he said are commonly used to wrap marijuana. But again, it is not clear whether the pieces of paper were found in the notebook or on top of the desk. He opened the notebook and immediately noticed a green crushed substance in the crease of the book. Harris was then arrested and a thorough search of the premises made. Four or five envelopes of narcotics were found in the pockets of his clothes in the closet. Officer Nash testified that several times during the search Harris insisted he was only a user and suggested that if the matter could be "straightened out," he could get the officers a real good "peddler."

The defendant admitted that he was in his room at the Tivoli Hotel on September 13, 1958, when officers Nash and Vrdolyak arrived. From this point his testimony is at complete variance from that of the officers. He said the room door and closet door were swung against each other so that the two doors allowed ventilation but prevented one seeing into the room. When the officers knocked on the door, it opened and they entered his room. They did not

identify themselves until they were in the room. He denied that he gave the officers permission to search the room, that he owned the notebook, that there were brown packets of marijuana in his coat pockets and that he is a "dope peddler."

Defendant first suggests that the search was unlawful because the officers did not obtain a search warrant, although they had time so to do. This contention has been rejected by the United States Supreme Court, (*United States* v. *Rabinowitz*, 339 U.S. 56, 94 L. ed. 653,) and by this court. *People* v. *DiGerlando*, 30 Ill.2d 544.

Consent is a waiver of the constitutional privilege against unreasonable search, (*People* v. *Henderson*, 33 Ill.2d 225; *People* v. *DiGerlando*, 30 Ill.2d 544; *People* v. *Fiorito*, 19 Ill.2d 246; *Zap* v. *United States*, 328 U.S. 624, 90 L. ed. 1477,) and where the evidence on the issue of consent is in conflict, this court will accept the finding of the trial court unless it is clearly unreasonable. (*People* v. *DiGerlando*, 30 Ill.2d 544; *People* v. *Fiorito*, 19 Ill.2d 246; *People* v. *Peterson*, 17 Ill.2d 513.) We cannot say that it was unreasonable to believe the officers' testimony on the issue of consent. See *People* v. *Henderson*, 33 Ill.2d 225.

Defendant also argues that his consent was consent to a lawful search only. The record does not support this argument. He testified that he was about to ask the officers if they had a search warrant, when they told him to sit down or they would hit him in the mouth. He also denied that he consented to a search of his room.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*