**People of the State of Illinois, Plaintiff-Appellant, v. Clark Memorial Home, a Corporation, and Robert D. Clark Post 1205 American Legion, an Unincorporated Association, Defendants-Appellees.**

Gen. No. 69–45.

Second District.

November 12, 1969.

William V. Hopf, State's Attorney of DuPage County, of Wheaton (Helen Kinney and Ralph Gust, Jr., Assistant State's Attorneys, of counsel), for appellant.

Harold J. Spelman, of West Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendants in this case were charged with gambling and keeping a gambling place in violation of sections 28–1(a)(3); 28–1(a)(7) and 28–3 of the Criminal Code (Ill Rev Stats 1967, c 38, pars 28–1(a)(3); 28–1(a)(7) and 28–3). They made a timely motion to suppress certain items sought to be admitted into evidence by the prosecution. The trial court granted the motion and the State appealed pursuant to Supreme Court Rule 604(a), (Ill Rev Stats 1967, c 110A, par 604(a)).

The facts of this case are as follows: On the evening of October 19, 1967, Charles Siragusa, then executive director of the Illinois Crime Investigating Commission, entered the Clark Memorial Home, an American Legion Post, with six other officers or agents. At the time they entered, two men were coming out of the premises and the door was open. The premises were open only to members and guests, with entry normally procured through the use of an electric doorlock system, which was operated by a key card issued to members of the Post, and their guests.

Upon entering the building, Siragusa talked to Victor Kubica, an officer of the Post. There is conflict in the testimony as to whether Kubica indicated that he was the manager of the Home, but it is undisputed that Siragusa advised Kubica that his office had received various complaints relative to gambling on the premises and that he (Siragusa) felt that the Home had persisted in its unlawful operation. Kubica then asked Siragusa to come into the office and talk, and the two of them, along with Captain Crockett, went into the office. When they entered, Siragusa saw a stack of bingo cards and a bingo machine, which were in plain view on the shelf. Upon recognizing what had transpired, Kubica stated that he had no further use for this equipment and asked Siragusa to take it away. He then gave the bingo cards, bingo machine and some pull tickets to Siragusa.

Siragusa then stated that he had been informed that there were slot machines on the premises. Kubica led him to another room, pushed aside a curtain which disclosed four slot machines and asked Siragusa to take the machines because he didn't want gambling equipment on the premises; and he also revealed the location of additional pull tickets, which were taken from a jar behind the bar by one of the agents.

The State contends that the items heretofore described were admissible as evidence in a subsequent prosecution,

251

and that there was no search since there was no prying into a secret or hidden place. Alternatively, the State urges two additional grounds for reversal of the trial court: (1), that the gambling devices which were turned over to the officers were contraband and, under the statute, were subject to seizure and confiscation by the authorities, and that such devices are incapable of lawful ownership or use and are, therefore, not the proper subject of a motion to suppress; and (2), that consent to search was voluntarily given by Kubica, and that there was no evidence to support the finding of the trial court that the alleged consent was coerced and was, at best, a mere submission to authority.

As to the State's first contention: We believe that where the entry onto premises on the part of a law enforcement officer is illegal ab initio, we cannot apply the plain-view doctrine. This doctrine is applicable under varying situations and for different purposes. If items are in plain view, then they have been discovered without an illegal search. The existence and location of the items may be considered in deciding whether there are grounds for the arrest of a certain person. Also, the fact that the items were discovered without a search warrant may justify their seizure.

■ ■ It is well established that an unlawful search upon an illegal entry cannot be justified by what is found in the search, The People v. Dalpe, 371 Ill 607, 612, 21 NE2d 756 (1939), and it seems reasonable that this rationale should also be applied to the plain-view doctrine. In other words, the plain-view doctrine was not applicable unless Siragusa was on a part of the premises to which the general public was allowed access. Such was not the case. Also, the record fails to indicate the reliability of the information which Siragusa had received concerning gambling on the premises. The People v. Bankhead, 27 Ill2d 18, 20, 187 NE2d 705 (1963); Ill L Forum, Vol 1966, No. 2, pp 335, 336.

■ It does not appear to us that Siragusa properly gained entry into the Clark Home. The record revealed that the premises were not public in nature, and the State has failed to make a showing that the situation was of such emergency nature as to excuse the procurement of a search warrant. See: Ill L Forum, Vol 1966, No. 2, pp 331, 332, 333.

■ The State further argues that the devices taken by the officers were contraband and, under our statutes, subject to seizure and confiscation by the authorities; and that since the devices were incapable of lawful ownership or use, they were not properly objects of a motion to suppress. There is no merit to this contention. The People v. Mayo, 19 Ill2d 136, 139, 140, 166 NE2d 440 (1960).

In Mayo, the defendant had moved to suppress policy slips, which had been found in his car, on the ground that the search of the car violated his constitutional rights. The State conceded that the search was illegal, but contended, as the State does in the case at bar, that because the items seized were contraband, they still may be introduced into evidence. The court disagreed and stated that the protection against an unreasonable search is based upon the right of privacy of the individual; and that if the search is unlawful in the beginning, it is not made lawful by the discovery and seizure of contraband. The court concluded that the illegally seized contraband was subject to a motion to suppress.

■ The State also contends that the defendant consented to the search, and that the evidence then was improperly suppressed. The trial court, apparently, was of the opinion that Kubica held a managerial position and, hence, had the power to consent. See: 31 ALR2d 1078, 1088, 1091. However, it found that he did not voluntarily consent, and that his alleged consent was coerced.

We believe that the evidence supports the finding of the trial court. Had Kubica not said anything about the

253

slot machines or pull tickets, the officers could not have discovered them except by additional search. Kubica was confronted by officers who had already discovered the bingo equipment, and they advised him that they had been informed of other gambling equipment.

The situation can best be construed as one in which Kubica may have erroneously believed that it was useless to resist the inquiry in any manner, and that Clark Memorial Home, as well as himself, might benefit later on by his cooperation, particularly in view of the nature of the institution which was raided. The whole atmosphere of the purported consent was, at best, one of submission or resignation to police authority.

The trial court finding that there was no free and deliberate waiver of a constitutional right does not, under the evidence, appear clearly unreasonable. The order of the trial court granting the motion to suppress, thus, should be affirmed. The People v. Harris, 34 Ill2d 282, 285, 215 NE2d 214 (1966).

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.