(No. 46380.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CLYDE D. WISEMAN, Appellee.

*Opinion filed Sept. 27, 1974.—Rehearing denied Nov. 26, 1974.*

GOLDENHERSH, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Frank Bonan, State's Attorney of McLeansboro (James B. Zagel and Melbourne A. Noel, Jr., Assistant Attorneys General, of counsel), for the People.

Robert H. Rath, of Harrisburg, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of Hamilton County found the defendant, Clyde D. Wiseman, guilty of theft, and he was sentenced to imprisonment in the penitentiary for not less than one nor more than three years. The Appellate Court, Fifth District, reversed the conviction on the ground that the trial court erred in denying the defendant's pretrial motion to suppress certain evidence which he claimed had been illegally seized, and remanded the cause for a new trial. (*People v. Wiseman* (1973), 15 Ill. App. 3d 113.) We allowed the State's petition for leave to appeal.

The sole issue argued in this court is whether the trial court properly denied the defendant's pretrial motion to suppress a typewriter, a television set, a portable radio, two cabinets used to display tape cartridges, 66 stereo tape

cartridges, a notary public seal from the State of Illinois, several cigarette lighters, and any evidence obtained from these articles.

The items were seized from the defendant's automobile while it was parked in the garage at the Owensboro, Kentucky, police station and after two Owensboro policemen, Officers Conkright and Cravens, had confronted the defendant and his three companions at the parking lot of Eddie Jones's Repair Shop and "requested" them to accompany the officers to the police station. The typewriter, television set, radio, tape cabinets, and tapes were in plain view in the defendant's automobile when they were seized without a warrant, while the notary public seal and the cigarette lighters were seized after a warrantless search of the defendant's car. The notary public seal was discovered in the glove compartment and the cigarette lighters were found wrapped in a rag under the seat of the car. After running the serial number of the typewriter through the National Crime Investigation Computer Center, the police learned that the typewriter had been reported stolen. And, by checking with the Illinois Secretary of State, they learned that the notary public seal had been issued to Donald Endicott of Dale, Illinois. The Owensboro police then telephoned Endicott and were informed by him that the seal, as well as the other items found in the defendant's car, had been stolen during a burglary. After verifying this information with the Hamilton County Sheriff, Officer Conkright placed the defendant and his companions under arrest. The defendant contends that the warrantless search of his automobile and the warrantless seizure of the items therein violated the fourth amendment to the United States Constitution, and that it was error to receive in evidence these items, or any other evidence derived from them.

The fourth amendment to the Constitution of the United States, applicable to the States through the fourteenth amendment, prohibits unreasonable searches

and seizures. Although a warrant issued by a neutral judicial officer is generally required to meet this reasonableness test, not all warrantless searches and seizures are unreasonable. The courts have recognized certain exceptions to the warrant requirement, one of which concerns searches of automobiles.

A distinction between the search of an automobile and the search of a dwelling house or other building has long been recognized. (*E.g., Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280; *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.) In *Chambers* the court stated: "*Carroll* \*\*\* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." (399 U.S. at 51, 26 L. Ed. 2d at 428, 90 S. Ct. at 1981.) The court in *Chambers* then went on to hold that if the automobile could have been properly searched on the highway, the police could postpone their search until a later time, and could conduct a valid warrantless search of the automobile at the police station, even though the occupants of the car were then in police custody. This court reached the same result in *People v. Hanna* (1969), 42 Ill.2d 323, and *People v. Canaday* (1971), 49 Ill.2d 416. Under these authorities we hold that the search in this case did not violate the defendant's constitutional right.

When Officer Conkright arrived at the parking lot of Eddie Jones's Repair Shop he knew from information received from the clerk in an Owensboro pawnshop that two men had been there, attempting to sell a typewriter and a television set; that the men had said they were from Indiana, but drove a station wagon bearing Illinois license plates; and that the men had been referred to Eddie Jones's Repair Shop. At the parking lot Officer Conkright

met Officer Cravens and both men saw the station wagon with its Illinois license plates, occupied by a young boy and a man that Officer Conkright knew had a criminal record. The officers were also able to see, in plain view in the automobile, a television set, a portable radio, a typewriter, and some stereo tape cartridges. When the defendant came out of the store, leaving inside some stereo tape cartridges that he had been attempting to sell, he was stopped by Officer Conkright and gave an unresponsive reply to the officer's question as to why he was trying to sell the merchandise. In addition, the man who came out of the store with the defendant attempted to evade the police officers by turning the corner and walking around the side of the building. This information was sufficient to cause a reasonable man to believe that the articles in the defendant's automobile were stolen property, and that other evidence of a crime could be found in the car. The police therefore had probable cause to search the automobile.

The fact that the search did not occur at the parking lot does not invalidate the search. (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *People v. Canaday* (1971), 49 Ill.2d 416.) The decision of the police officers to conduct the search at the stationhouse, rather than in the store parking lot, was reasonable under the circumstances. In order to determine whether the articles in the defendant's automobile were stolen, the police had to run the serial numbers through the N.C.I.C. computer. This could have been done through the police communications system in the squad car, but that procedure would have immobilized the officers and increased the risk of error in transmission. Moreover, in the parking lot the two officers were outnumbered by the three adult males who were being investigated, thus presenting a potentially dangerous situation.

The only possible distinguishing feature between this case and *Chambers* is that in *Chambers* the occupants of

the automobile were arrested immediately after their car was stopped on the highway, and before the search at the police station, while in this case the police officers testified that the defendant and his companions were not arrested until the police had completed the search of the automobile and learned positively that the items found in the car had been stolen. On closer examination, however, this potential distinction disappears. Despite the police officers' appraisal of the legal effect of their conduct, it is clear to us that the defendant was arrested at the parking lot when he was "requested" to accompany the officers to the police station. It was at that point that he was deprived of his freedom of action by the police officers. We are unable to believe that the officers would have permitted the defendant to refuse to accompany them to the stationhouse or allowed him to drive away from their "escort," which consisted of Officer Cravens in his police car leading the defendant's car, and Officer Conkright in his police car following it.

Our disagreement with the State as to the exact moment at which the arrest took place does not alter the outcome of this case. When the officers directed the defendant to drive to the police station they had probable cause to believe that the defendant had committed the crime of burglary or of receiving stolen property (see Ky. Rev. Stat. 1971, chs. 433.120, 433.290), and therefore had probable cause to arrest and to search. *People v. Georgev* (1967), 38 Ill.2d 165, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202.

The judgment of the appellate court is reversed, and that of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. The facts in *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, *People v. Hanna*, 42

Ill.2d 323, and *People v. Canaday,* 49 Ill.2d 416, cited by the majority, do not remotely resemble the facts shown by this record. In each of those cases the arresting officer, at the time of apprehension, knew that a crime had been committed and had received descriptions of both the automobile involved and the alleged perpetrators. Here it is apparent from the arresting officer's testimony that when he "requested" that defendant accompany him to the police station he did not even know that a crime had been committed, and that his request was motivated, not by reasonable grounds, but by suspicion. The majority, without citation of authority, states that the information which the police officer possessed "was sufficient to cause a reasonable man to believe that the articles in the defendant's automobile were stolen property, and that other evidence of a crime could be found in the car. The police therefore had probable cause to search the automobile." The reason for the absence of authority to support this unprecedented conclusion is obvious—there is none—and unless the Fourth Amendment is to be completely emasculated this statement will stand alone, uncited, and, hopefully, forgotten.

Furthermore, it is apparent that the problems which the majority feared might present themselves had the police officer searched the automobile at the parking lot posed no threat when the search was made. Officer Conkright testified that the defendant, following the police cruiser, drove the automobile 20 blocks to the police station and that upon arrival there the automobile was parked in the police garage. Some time after that, upon receipt of information that the typewriter was stolen, the automobile was searched.

On this record the warrantless search of the automobile was inexcusable. Until receipt of the information that the typewriter was stolen there was no probable cause for either an arrest or a search. In fact, Officer Conkright testified that defendant was arrested "when we found out

that [the typewriter] was stolen merchandise." At that point there was no reason whatsoever, so far as this record shows, for failure to seek a warrant to search the automobile already in police custody.

As the Supreme Court stated in *Johnson v. United States,* 333 U.S. 10, 13, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369, "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the amendment to a nullity and leave the people's homes secure only in the discretion of police officers."

The appellate court correctly held that the evidence obtained from defendant's automobile should have been suppressed, and its judgment should be affirmed.