THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLIE HENDRIX, Defendant-Appellant.

(No. 59837;

First District (4th Division)—December 20, 1974.

James J. Doherty, Public Defender, of Chicago (Steven Silets and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Michael J. Polelle, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant-appellant was convicted in a bench trial of unlawful use of weapons and possession of marijuana. He was sentenced to two concurrent 18-month terms of probation. Defendant appeals and maintains that the trial court erred in not granting his motion to suppress the gun that was recovered from the glove compartment of the vehicle defendant was driving. In addition, defendant contends that his conviction for possession of marijuana should be reversed because inadmissible hearsay evidence was utilized in obtaining the conviction.

On May 11, 1973, at approximately 12:55 A.M., defendant was driving a vehicle in the vicinity of 8 N. Wood in Chicago. He was stopped by Officer Fields of the Chicago Police Department and his partner, for driving a vehicle with an inoperative license plate light. This was a violation of the Illinois Vehicle Code, Section 12—201(b). (Ill. Rev. Stat. 1973, ch. 95½, par. 12—201(b).) Officer Fields asked the defendant to produce his driver's license but he did not have one. Defendant had a

learner's permit which requires that a licensed driver with at least 1 year's experience be seated next to the person driving on such an instruction permit. (Ill. Rev. Stat. 1973, ch. 95½, par. 6—105(a)(1).) There was no one accompanying the defendant. Officer Fields testified that upon defendant's failure to produce a driver's license he was arrested. Officer Fields then searched the glove compartment of the vehicle and found a .32-caliber revolver. In regards to the purpose of the search Officer Fields stated, "I was looking for identification of the vehicle." Officer Fields stated that at the time he searched the glove compartment the defendant was approximately 15 feet away from the vehicle. Fields also testified that after the defendant was arrested he was not allowed access to the automobile. Defendant was then transported to a police station and a search of his person was made. A tea bag containing a substance suspected to be marijuana was found and was submitted to the crime laboratory for analysis.

At trial Officer Fields was asked if a pat-down search was made at the scene of the stop and he responded, "After he was placed under arrest for the no-driver's license we were going to put him in our squad car and we patted him down for our own protection." Officer Fields also stated that his partner detained the defendant while he searched the glove compartment and that he had no fear of harm from the defendant as he conducted the search.

During the direct examination of Officer Fields, the assistant State's Attorney introduced into evidence the Chicago Police Department crime-laboratory report of the analysis that had been made on the tea bag taken from the defendant. Officer Fields was asked if the report being introduced was the report he received from the crime laboratory and he responded affirmatively. Defense counsel stipulated that the substance analyzed by the crime laboratory was the same substance taken from the defendant. However, defense counsel would not stipulate that the total substance was marijuana. He stated, "Some of it was seeds and twigs, so that the total weight wasn't 3.28 grams." The assistant State's Attorney then read the report into the record without objection from defense counsel. The report indicated the total weight of the substance taken from the defendant was 3.28 grams and consisted of crushed green plants, seeds and twigs. The substance was subjected to microscopic and chemical identity tests which revealed the presence of marijuana. The chemist who made the analysis did not testify.

The trial court, as indicated previously, rendered a judgment of guilty on both offenses. After a hearing in aggravation and mitigation, the defendant was sentenced to two concurrent terms of 18 months' probation.

■■ We are of the opinion that the trial court did err in not granting

the defendant's motion to suppress the gun, and therefore the conviction on the unlawful use of weapons charge must be reversed. There can be no doubt but that a search did occur in the case at bar. As stated in *People v. Davis*, 33 Ill.2d 134, 138, 210 N.E.2d 530, 532 (1965), "A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. *People v. Heidman*, 11 Ill.2d 501; *People v. Marvin*, 358 Ill. 426." The gun recovered from the glove compartment of the vehicle the defendant was driving was concealed and not in plain view. While a search incidental to a lawful arrest can be made, there are boundaries beyond which such a search cannot transcend.

■■ The circumstances in which a search incident to arrest is permissible were well stated by our supreme court in *People v. Watkins*, 19 Ill.2d 11, 18-19, 166 N.E.2d 433, 437 (1960). The court there stated: "A search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime." The boundaries beyond which a search incident to a lawful arrest cannot extend were established by the United States Supreme Court in *Chimel v. California*, 395 U.S. 752, 762-63, 23 L.Ed.2d 685, 694, 89 S.Ct. 2034, 2040 (1969):

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

When the circumstances surrounding the search conducted in the case at bar are considered in light of the foregoing principles, it cannot be held that the search was a permissible search incidental to a lawful arrest.

■■ Officer Fields testified that after the defendant was arrested, he was not permitted access to the vehicle and at the time the vehicle was searched the defendant was approximately 15 feet away. In addition and most importantly, Fields stated that at the time he searched the vehicle he

was under no fear of harm from the defendant. It is, therefore, apparent that the search conducted in the instant case was not authorized under the principles of the *Watkins* decision and exceeded the boundaries of a search incident to a lawful arrest as outlined in *Chimel, supra.* The search was not reasonably necessary to protect the arresting officer, to prevent the defendant from escaping, or to discover fruits of a crime. In addition, the area searched was not that within which the defendant might have gained possession of a weapon or destructible evidence. Defendant was 15 feet away from the vehicle and being detained by Officer Fields' partner.

■■ We agree with the State's contention that searches incidental to traffic offenses are not automatically invalid. However, the law relating to such searches has also been well established. As stated in *People v. Davis, supra,* at page 138:

> "This court has often dealt with the rights of the police to search the driver and his automobile following an arrest for a traffic violation. In *People v. Thomas,* 31 Ill.2d 212, we set forth the principle that if circumstances reasonably indicate that the police may be dealing not with the ordinary traffic violator, but with a criminal, then a search of the driver and his vehicle is authorized in order to insure the safety of the police officers and to prevent an escape."

There is nothing in the record to indicate that Officer Fields and his partner could have reasonably suspected that the defendant was anything other than an ordinary traffic violator. The State has referred this court to the two recent United States Supreme Court cases of *United States v. Robinson,* 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467 (1973), and *Gustafson v. Florida,* 414 U.S. 260, 38 L.Ed.2d 456, 94 S.Ct. 488 (1973). However, those cases involved searches of the person of a traffic violator. While the Supreme Court held that a full and thorough search of the person could be made incidental to a lawful custodial arrest for a traffic violation, there is nothing in either of these cases to warrant validating the search conducted in the case at bar.

■■ The State also cited the cases of *Application of Kiser* 419 F.2d 1134 (8th Cir. 1969), and *Berlin v. State,* 12 Md.App. 48, 277 A.2d 468 (1971), in its attempt to justify as reasonable the search conducted in the case at bar. However, both cases are easily distinguishable. In *Kiser,* the defendant was arrested for grand larceny of a gun. At the time of the arrest, Kiser was standing next to an automobile and a policeman removed a blanket and uncovered two guns in the back seat of the vehicle. The court held that the search was reasonable because Kiser was within "leaping range" of the guns in the back seat. In the instant controversy, the defendant was approximately 15 feet away from the vehicle and well

outside the area of ready accessibility to the weapon. In *Berlin* the evidence seized was a few feet from the arrestee when it was confiscated. The court held the search and seizure as valid as incidental to a lawful arrest. The court stated at page 57: "The area of immediate control cannot be measured in feet, or by an arm's length, but is to be measured reasonably with respect to the accessibility of the articles and their nature." In the case at bar when we view the area of immediate control reasonably and with respect to the accessibility and nature of the article seized, no other conclusion can be reached but that the search was improper. The revolver was in a closed albeit unlocked glove compartment; the defendant was approximately 15 feet away from the vehicle; and the defendant was being detained and controlled by a police officer. Under these circumstances the search was clearly unreasonable and violative of the defendant's constitutional right to protection against unreasonable search and seizure.

■■ The revolver seized and introduced into evidence in the case at bar was the fruit of an unreasonable search and should have been suppressed. (*Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684 (1961).) Without this evidence the defendant's conviction for unlawful use of weapons could not have been obtained and therefore, the conviction on that charge must be reversed.

■■ Defendant also contends that his conviction for possession of marijuana must be reversed because the State introduced inadmissible hearsay evidence in obtaining the conviction. As previously stated, during trial the assistant State's Attorney read into evidence the report of the chemical analysis that had been made on the substance taken from the defendant. This report had been made by the Chicago Police Department crime laboratory but the chemist who conducted the analysis did not testify. However, at the time the report was read and introduced into evidence no objection was made by the defendant's attorney. It is a well established rule of law that failure to object constitutes a waiver of the objection and that the issue cannot be raised for the first time on appeal. (*People v. McAdrian*, 52 Ill.2d 250, 287 N.E.2d 688 (1972); *McElroy v. Force*, 38 Ill.2d 528, 232 N.E.2d 708 (1967).) We do not believe the circumstances of this case warrant consideration of this issue under the plain error doctrine. (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a).) Therefore, the defendant's conviction for possession of marijuana is affirmed.

For the reasons herein stated, the judgment of the Circuit Court of Cook County is reversed in part and affirmed in part.

Reversed in part and affirmed in part.

DIERINGER and JOHNSON, JJ., concur.