THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RICHARD EUGENE BLITZ, Defendant-Appellee.

Fifth District   No. 75-155

Opinion filed April 28, 1976.

420

JONES, J., dissenting.

Herbert J. Lantz, State's Attorney, of Chester (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Stephen P. Hurley and Thomas F. Sullivan, both of State Appellate Defender's Office, of Mt. Vernon, and John Ozella, Law Student, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

*This is* an appeal by the State, pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1973, ch. 110A, par. 604), from an order entered by the circuit court of Randolph County suppressing evidence seized by the police after the defendant, Richard Eugene Blitz, was stopped, ostensibly, for a traffic offense.

The defendant was charged by information with the unlawful possession of cannabis in that he possessed more than 30 grams but less than 500 grams of the controlled substance in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, 704(d)). The defendant moved to suppress the physical evidence against him on the grounds of unlawful search and seizure. After a hearing was conducted, the trial court granted the defendant's motion to suppress. This appeal followed.

The principle witnesses at the suppression hearing were the defendant and Kenneth Beam, a deputy sheriff of Randolph County. Beam had stopped the defendant who was driving a car on the night of February 23,

1975, in Steeleville. Beam testified that he and other officers searched the defendant's car and found cannabis in the trunk of this car.

Beam testified that he had the residence of a George Kraft, in Percy, under surveillance during the evening of February 23. According to Beam, the sheriff's office had received a "tip" that traffic in drugs was taking place at Kraft's house. Beam did not know the identity of the source of the "tip" and could not remember who in the sheriff's office told him about the alleged drug dealing at Kraft's.

Beam stated that during the night in question he observed a number of individuals drive up to and then enter the Kraft house. Then, in a relatively short period of time, these same individuals would depart. At one point, he saw two men go from the Blitz auto to Kraft's and then return to their car where they put a bag in the trunk.

Beam followed the Blitz auto when it left Kraft's. When they reached Steeleville, Beam pulled the Blitz car over. Beam described the defendant as being nervous because he hurried over to the squad car. Beam informed the defendant, who was driving, that he was stopped for having an inoperative license plate light. Within a few minutes, three other policemen arrived at the scene in response to a call for assistance by Beam.

After the occupants of the car were searched by the police, the interior of the car was searched. Finally, the police searched the trunk of the car. The defendant testified that the police searched the trunk without his permission. He admitted, however, that he did not protest because he was frightened by the "shotgun on me." Beam stated that the defendant gave him permission to search the car. According to police testimony, a paper bag was found in the trunk, which contained two plastic bags of cannabis.

The lower court entered a written order granting defendant's motion to suppress. The court found that Officer Beam did not have reasonable cause to search the trunk of defendant's car, nor was the search justified on account of the personal safety of the arresting officers. Furthermore, the lower court questioned the voluntariness of the defendant's consent to the trunk search given the fact that he was surrounded by four armed policemen, one of whom was brandishing a shotgun.

There are two issues raised by the State on appeal; first, whether the unverified information from an unidentified source together with certain "suspicious circumstances" observed by the police gave the police probable cause to search the trunk of defendant's car; and secondly, whether the search of the defendant's car was a valid search incidental to the arrest of defendant for a minor traffic violation. A collateral issue raised by the defendant, but ignored by the State, is whether the defendant consented to the search and if such consent was voluntary.

Addressing the first of these issues the State argues that "corroborative" observations of deputy sheriff Beam on February 23, 1975, together with earlier observations of his fellow officers, operated to cure whatever deficiency existed with reference to the reliability of the State's unidentified informant. We disagree.

■■ While the legality of warrantless searches of automobiles differs from searches of stationary structures (*Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280; *Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302), the police must still have " 'reasonable or probable cause' to believe that they will find an instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." (*Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 221, 20 L. Ed. 2d 538, 543, 88 S. Ct. 1472, 1475.) The record before us does not contain evidence that deputy sheriff Beam had reasonable or probable cause to believe that evidence pertaining to a crime would be found in defendant's vehicle. As far as the record shows, Officer Beam conducted the search of the defendant's vehicle because he suspected that there might be illegal substances in such car, however, the facts related by Beam are insufficient to constitute probable cause.

The trial court properly found that informant's information regarding drug traffic at the Kraft residence was unreliable. The trial court's finding was based on the fact that the State proffered no evidence regarding the informant's identity or his past reliability. Nor was this defect cured by the personal observations of deputy sheriff Beam, even if we include the earlier observations of other police which were allegedly related to Beam.

■■ At most, Beam was advised by his fellow officers that a large number of persons had been frequenting Kraft's residence. His own observations were limited to seeing two individuals from the defendant's car enter the Kraft residence and depart after about 10 minutes. Upon departing these individuals placed a bag in the trunk of defendant's car. Beam recognized one of the occupants of this car to be Michael Blitz, the defendant's brother. It was not shown, however, that Michael Blitz was known to be associated with drug traffic. After following the defendant's car Beam observed that the defendant's license plate light was not illuminated and that the license plate was obscured by a trailer hitch. Beam continued to follow the defendant's car in his unmarked police car. Beam noticed that each time he used his police radio one or more of the occupants in the defendant's car turned around and looked at him. When Beam finally stopped the defendant's car, the defendant jumped out of his car and hurried back to Beam's vehicle. Beam characterized the defendant as "acting in a nervous manner." Beam observed a citizen's

band radio in defendant's car, which he thought he heard when he approached the defendant's vehicle. After requesting all of the occupants to get out, each was searched. A knife was found on the person of Michael Blitz. None of the occupants attempted to flee the scene. We find these facts, whether considered individually or collectively, insufficient to elevate deputy sheriff Beam's suspicions to the requisite reasonable or probable cause necessary to justify a warrantless search of defendant's car for evidence pertaining to a crime unrelated to the minor traffic offense for which the defendant was, ostensibly, stopped.

■■ The next issue raised is whether the search of defendant's car was a valid search incident to an arrest. The trial court concluded that it was not, holding that the case of *People v. Hendrix*, 25 Ill. App. 3d 339, 323 N.E.2d 505, controlled. We agree with the legal analysis set forth in *Hendrix* and its applicability to the instant case.

■■ The final issue presented for review is whether the defendant consented to the search and if such consent was voluntary.

The test to be employed to determine the question of whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, "is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048.) Since the trial court found that defendant's "bare" consent was given at a time when he "was in the presence of four police officers, one of whom was covering him with a loaded shotgun and in the words of the defendant himself he was in an extremely nervous and apprehensive condition" and such finding is not clearly unreasonable (see *People v. Harris*, 34 Ill. 2d 282, 215 N.E.2d 214, 215), we agree with the trial court's conclusion that the defendant's consent, if given, was not voluntarily given. In the words of the court in *People v. Clark Memorial Home*, 114 Ill. App. 2d 249, 254, 252 N.E.2d 546, 549, "The whole atmosphere of the purported consent was, at best, one of submission or resignation to police authority."

In reaching our conclusion that no valid consent was given we are not unmindful of the trial court's consideration of the fact that the defendant was neither advised of "his rights" or of his right to refuse the request by the police to search the trunk of his car. While the United States Supreme Court has stated that knowledge of the right to refuse consent need not be established by the government "as the *sine qua non* of an effective consent," it "is one factor to be taken into account." (*Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862, 93 S. Ct. 2041.) It is clear that when this factor is considered in conjunction with atmosphere prevailing at the time the defendant allegedly gave his "consent," that such consent was not voluntary.

Accordingly, the order entered by the circuit court of Randolph County suppressing evidence seized by the police from the defendant is affirmed.

Affirmed.

G. J. MORAN, J., concurs.

Mr. JUSTICE JONES, dissenting:

The majority has either overlooked or chosen not to apply several cases of our supreme court which clearly indicate that the motion to suppress in question should have been denied. Accordingly, I respectfully dissent.

In *People v. Wiseman*, 59 Ill. 2d 45, 319 N.E.2d 225, the supreme court pointed out that a distinction between the search of an automobile and the search of a dwelling house has long been recognized, citing *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, and *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.

In *Preston v. United States*, 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881, the supreme court held that searches of motorcars must meet the test of reasonableness under the fourth amendment before evidence obtained as a result of such searches is admissible and said that common sense dictates that questions concerning searches of motorcars or other things readily moved cannot be treated identically with searches of fixed structures like houses.

In *People v. Palmer*, 62 Ill. 2d 261, 263-64, quoting from *People v. Brown*, 38 Ill. 2d 353, the Illinois Supreme Court stated:

" 'It has long been established that the constitutional safeguards contained in section 6 of article II of the Illinois constitution, and the fourth amendment to the United States constitution, do not prohibit all searches made without a warrant, but only those which are unreasonable, and that the determinations of the reasonableness of any given search must depend upon the facts in the particular situation. (*United States v. Rabinowitz*, 339 U.S. 56, 94 L. Ed. 653; *People v. Watkins*, 19 Ill. 2d 11.) In *Watkins* we held that a search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officers from attack, to prevent the prisoner from escaping, or to discover the fruits of a crime. We went on to state that the total absence of license plates on a car could reasonably suggest a serious violation of the law which would justify a search.

In *People v. Thomas*, 31 Ill. 2d 212, we held that if circumstances reasonably indicate that the police may be dealing, not with an ordinary traffic violator, but with a criminal, then a search of the

driver and his vehicle is authorized in order to insure the safety of the police officers and to prevent an escape.' 38 Ill. 2d 353, 355."

Were we to apply the guidelines of the above cases to the facts present here, there is no question but that the motion to suppress would be denied.

Another case, *People v. McKnight*, 39 Ill. 2d 577, 237 N.E.2d 488, is practically identical on its facts with the case under consideration. In *McKnight* the car was stopped for a mere traffic violation, no light over the license plate, there were suspicious movements of the defendant when a police spotlight was turned on him, the car did not belong to defendant, and, "most important of all," defendant's companion was armed. These factors the court found sufficient to give the police reasonable cause to believe that they were not dealing with ordinary traffic offenders and a warrantless search of the car which disclosed weapons was sustained.

Aligning the facts of this case with *McKnight*: deputy Beam followed defendant away from the Kraft house at night, he stopped defendant for not having an illuminated light over his license plate, after the stop the defendant jumped out of his car and hurried back to deputy Beam's car before Beam could get out of his car, the defendant appeared "shaky," upon a search of defendant and his brother, the brother was found to be armed with a hunting knife.

At this point the officers were fully justified in believing that they were dealing with something more than a mere traffic violator and conducting a search of defendant's automobile for fruits and instrumentalities of crime. *People v. McKnight; People v. Thomas.*

Although the parallel with *McKnight* would suffice to provide probable cause, there is much more evidence that could be used to furnish probable cause in this case. The sheriff's department had been keeping the house of George Kraft under surveillance for about a week and deputy Beam was but one of the officers involved. On the night in question Beam was on surveillance duty at the house. Other deputies told him that a reliable source had advised them that drugs were being sold at that particular house. The previous night one of the deputies on surveillance duty advised Beam that they had information that a shipment of drugs was coming in. Beam remained at his post for about 15 or 20 minutes during which time he noticed four to six cars drive up and leave after 5 or 10 minutes. Beam noticed a man named Michael Blitz (the defendant's brother) get out of a car, go into the house, leave about 5 minutes later and put a brown bag in the trunk of the car. Beam noticed that each time he used his radio to call for assistance the occupants of the car he was following would turn around and look although he was in an unmarked car at the time. When Beam walked to defendant's car he

noticed that an eight-channel radio was in the back seat and he heard the defendant's brother change the channel upon his approach.

The use of electronic technology by the defendant to monitor the police radio calls by deputy Beam adds a new dimension to fourth amendment reasonableness. It makes the rationale for warrantless search of automobiles of *Carroll v. United States, Chambers v. Maroney,* and *Preston v. United States* even more compelling.

In view of the facts and circumstances as they were disclosed to and discovered by deputy Beam he would have been derelict in his duty had he not made the stop and search in question here. A marshalling of the facts and circumstances surrounding the search places the case well within the limits of reasonable search and seizure permitted under the constitutions of the United States and the State of Illinois as those limits have been defined by the supreme courts of both jurisdictions.

Additional cases that would sustain the search in this case are *People v. Wolf,* 60 Ill. 2d 230, 326 N.E.2d 766; *People v. Holloman,* 46 Ill. 2d 311, 263 N.E.2d 7; *People v. Brown,* 38 Ill. 2d 353, 231 N.E.2d 577; *People v. Jones,* 38 Ill. 2d 427, 231 N.E.2d 580; *People v. Davis,* 33 Ill. 2d 134, 210 N.E.2d 530; *People v. Hendrix,* 25 Ill. App. 3d 339, 323 N.E.2d 505; and *People v. Babic,* 7 Ill. App. 3d 36, 287 N.E.2d 24.

Notwithstanding the large number of cases which directly deal with the question, not one case is cited by the majority for their conclusion. Neither do they attempt to draw analogies or make comparisons of the facts present here with the facts of the decided cases, despite the striking similarity of *McKnight.* I would observe, too, that the majority participated in a panel that decided *People v. Jefferies,* 6 Ill. App. 3d 648, 285 N.E.2d 592, that upheld the warrantless search of an automobile under circumstances considerably less compelling than those present here.